## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JULIEANN RAFINE,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

1:19-cv-14215-NLH

**OPINION**

_____

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003

     _On behalf of Plaintiff_

ANNE VON SCHEVEN
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123

     _On behalf of Defendant_

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] and Supplemental Security Income

_____

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of October 1, 2014.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Julieann Rafine, applied for DIB and SSI on March 22, 2015 and October 5, 2016, respectively, alleging

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

disability as of October 1, 2014.[4]  Plaintiff claims that she can no longer work as a contract administrator because she suffers from post-traumatic stress syndrome (PTSD), anxiety, depression, COPD, and asthma.[5]

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on February 8, 2018.  On April 16, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on May 10, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

---

[4] Even though Plaintiff contends that her onset date of disability is October 1, 2014, the relevant period for Plaintiff's SSI claim begins with her October 5, 2016 application date, through the date of the ALJ's decision on April 16, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[5] Plaintiff was 42 years old at the time of her disability applications.  Under the regulations, this is defined as a "younger individual" (age 18-49).  20 C.F.R. § 404.1563.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the

4

record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to

scrutinize the record as a whole to
determine whether the conclusions reached
are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in

6

death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[6] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix

---

[6] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not argue
that any of these amendments are relevant to Plaintiff's appeal.

> 1 <u>and</u> has lasted or is expected to last for a
> continuous period of at least twelve months, the
> claimant will be found "disabled."

4.   If the claimant can still perform work he has done in
     the past ("past relevant work") despite the severe
     impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience
     to determine whether or not he is capable of
     performing other work which exists in the national
     economy.  If he is incapable, he will be found
     "disabled."  If he is capable, he will be found "not
     disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of his claim by a preponderance of the evidence.  See <u>id.</u>  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."

<u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); see <u>Olsen v.</u>

_Schweiker_, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found Plaintiff's impairments of PSTD, depressive disorder, and asthma to be severe, and found Plaintiff's impairments of pseudobulbar affect (PBA), obstructive sleep apnea, and narcolepsy to not be severe.[7]  At step three, the ALJ determined that Plaintiff's severe impairments, or her severe impairments in combination with her other impairments, did not equal the severity of one of the listed impairments.  The ALJ then determined at step four that Plaintiff's residual functional capacity ("RFC")[8] precluded her from performing her past work as a contract administrator, but she was capable of performing unskilled work at all exertional

---

[7] Another one of Plaintiff's claimed impairments for disability was anxiety disorder.  The Court addresses below, _see_ _infra_ note 13, Plaintiff's argument presented in her reply brief that the ALJ erred because she failed to specifically address this impairment.

[8] The RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner and not for a medical provider, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

levels with certain limitations.  At step five, the ALJ found that Plaintiff was capable of performing jobs such as a library page, cash clerk, and shipping/receiver, all of which exist in significant numbers in the national economy.

Plaintiff argues that the ALJ erred at step two by not finding several of her impairments to be severe.  Plaintiff further argues that the ALJ erred in formulating Plaintiff's RFC because she failed to properly assess the medical evidence and Plaintiff's testimony, as well as consider all her impairments - severe and non-severe - in combination.  Plaintiff also argues that the ALJ erred by failing to reconcile the vocational expert's testimony regarding available jobs with Plaintiff's RFC because the proposed jobs do not match Plaintiff's RFC.

The Court finds that the ALJ did not err in the areas argued by Plaintiff and that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

### (1)  Whether the ALJ erred at step two and in formulating Plaintiff's RFC

Plaintiff argues that the ALJ improperly determined that Plaintiff's impairments of pseudobulbar affect (PBA), obstructive sleep apnea (OSA), and narcolepsy were not severe. Plaintiff further argues that even accepting the ALJ's determination that these impairments were non-severe, the ALJ

failed to consider these impairments in the RFC analysis in combination with her severe impairments as she is required to.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003). When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case. Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005)); see also 20 C.F.R. §§ 404.1523, 416.923 (explaining that because the ALJ considers the combined effects of all of a claimant's impairments, severe and non-severe, throughout the subsequent steps of the process, the designation of a particular impairment as severe or non-severe is not dispositive unless a decision is made at step two).

The Court finds that any error in the ALJ's step two

11

determination as to the severity of Plaintiff's impairments of PBA, OSA, and narcolepsy is harmless because contrary to Plaintiff's argument, the ALJ properly considered these impairments in the overall RFC assessment.[9]  In doing so, the Court also rejects Plaintiff's argument that the ALJ did not properly support her RFC determination because of her failures in assessing the medical evidence and Plaintiff's testimony.

With regard to Plaintiff's physical impairments of asthma, PBA, OSA, and narcolepsy, the ALJ detailed the medical evidence regarding these diagnoses, the treatment Plaintiff received for these impairments, and the progression of the effects of these impairments on her daily living activities.  (R. at 18-22.) Although Plaintiff struggled with these impairments since 2014, causing her insomnia at night and falling asleep during the day,[10] by August 2016 with various treatments, such as a CPAP

---

[9] For PBA, OSA, and narcolepsy, the ALJ found at step two that they were not severe impairments because they were "controlled by medications and/or do not cause vocationally relevant limitations of function.  The claimant admitted at the hearing that her pseudobulbar affect is much better with medication." (R. at 15.)

[10] Plaintiff also testified at the hearing that she experiences black outs, with the most recent one the day before the hearing. Plaintiff argues that the ALJ improperly ignored Plaintiff's black outs.  The Court does not agree.  The ALJ specifically recounted Plaintiff's testimony, which included Plaintiff's testimony regarding her black outs.  (R. at 19.)  The ALJ did

machine and medication, and an attempt to stop smoking
cigarettes, Plaintiff reported that she no longer woke up at
night with shortness of breath, a pulmonary examination was
normal, her chest and lungs were clear to auscultation and
percussion with no accessory muscle use, and a chest x-ray and
pulmonary function test also were normal.  (R. at 20, 21, 442-
443.)  By June 2017, Plaintiff had resumed smoking half a pack
of cigarettes and had stopped using her CPAP machine, but even
then she reported that she no longer woke up at night.  (R. at
461-65.)

---

not specifically address Plaintiff's black outs but that does
not mean the ALJ did not consider them.  See Jean-Pierre v.
Commissioner of Social Security, 2017 WL 4316880, at *5 (D.N.J.
2017) "[A]n ALJ is not required to go line-by-line through a
report and explain the weight he is providing to every one of a
medical provider's findings.") (citing Hur v. Barnhart, 94 F.
App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the
ALJ discuss in its opinion every tidbit of evidence included in
the record."); Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir.
2001)).  Additionally, the only records Plaintiff refers to in
support of her black outs are her hearing testimony and
statements she made to her treatment provider on September 24,
2015.  (R. at 433.)  Plaintiff does not point to any evidence
that her black outs were an impairment diagnosed by a medical
provider.  The ALJ does not have to address a claimant's alleged
conditions where the record does not otherwise support the
limiting nature of those conditions.  See id. (citing Ramos v.
Berryhill, 2017 WL 3393806, at *3 (D.N.J. 2017) ("While an ALJ
may not reject probative evidence without explanation, the ALJ
need not cite specific reasons for implicitly rejecting evidence
which is irrelevant or discounted by other evidence in the
record.")).

The ALJ also detailed Plaintiff's treatment of her PTSD and depression and how those impairments improved over time.  (R. at 19-22.)   Plaintiff related that she had a history of physical and sexual abuse, and in June 2015 she reported to a state consultative psychiatric examiner that she had frequent flashbacks, intrusive thoughts and nightmares of domestic violence, and difficulty concentrating and reading.  (R. at 20.) She reported being increasingly distressed, chronically jumpy and on edge, with history of panic attacks and noticeable startle response.  She characterized her mood as sad, down, despondent, hopeless, and depressed.  (Id.)

As of April 2016, Plaintiff reported to her treatment provider that she was currently in an abusive relationship.  The ALJ noted that as of October 2016, "[n]evertheless, on mental status examination, treating provider Susan Lotkowsky, DO found that the claimant's mood and affect were appropriate.  She was awake and alert, with normal attention span, concentration ability and fund of knowledge.  In addition, her recent and remote memory was intact, language was full, and her emotional control was remarkably improved." (R. at 21.)  By January 2017, Plaintiff had filed a restraining order against that individual.

The effects of Plaintiff's physical and mental impairments,

as well as her personal life, all took a positive turn by the
summer of 2017.  The ALJ noted that Plaintiff "reported being
happy, engaged, and functioning better in August.  She was
coping appropriately in October 2017.  Most of her treatment
notes detail the planning of her wedding.  She was excited and
looking forward to her wedding and, in November 2017, she was
married and busy caring for her stepdaughter and foster-
parenting her stepdaughter's boyfriend, who had been abandoned
by his parents."  (R. at 21.)

The ALJ also recounted Plaintiff's testimony at the hearing
(R. at 18-19) and the medical evidence by Plaintiff's treatment
providers and consultative examiners (R. at 19-22).  For each
provider or examiner who issued an opinion as to Plaintiff's
capabilities, rather than simply reporting medical findings, the
ALJ specified what weight she afforded those opinions, and
explained what evidence supported those determinations.[11]

For example, the ALJ afforded little weight to the opinion

---

[11] An ALJ is required to state what weight he or she ascribes to
a medical opinion, but not to other forms of medical evidence.
20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical
opinions. Regardless of its source, we will evaluate every
medical opinion we receive. Unless we give a treating source's
medical opinion controlling weight under paragraph (c)(2) of
this section, we consider all of the following factors in
deciding the weight we give to any medical opinion.").

of one of Plaintiff's treating physicians, Dr. Y. Gengi.  In

January 2018, Dr. Gengi filled out a medical source statement[12]

(R. at 565-571), about which the ALJ stated:

> Dr. Gengi opined that the claimant needed to lie down for a
> half-hour to 2 hours per day, at unpredictable times. She
> had good days and bad days, and was limited to work
> allowing her to be off-task for 25% of the workday or more.
> The claimant had marked limitation with simple tasks,
> maintaining attention, completing a normal
> workday/workweek, and interacting appropriately with
> supervisors (Exhibit 13F).  This opinion is afforded little
> weight, as it is in stark contrast with treating records
> from Cooper Primary Care, which demonstrate COPD improved
> with the claimant's medication regimen.  The evidence
> demonstrates PTSD and depression greatly improved with
> psychotropic medications and psychotherapy.  In addition,
> this opinion is more restrictive than indicated by the
> claimant's subjective complaints.

(R. at 21.)

    The ALJ also explained the weight she afforded to the

opinion of Plaintiff's treating psychiatrist, Camilo Serrano,

M.D., who also completed a medical source statement.  (R. at

572-577.)  The ALJ related Dr. Serrano's findings, and afforded

---

[12] Dr. Gengi's opinion was provided on a check-the-box form which
is considered "weak evidence."  Stelzer v. Commissioner of
Social Security, 2019 WL 950165, at *6 (D.N.J. 2019) (citing
Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form
reports in which a physician's obligation is only to check a box
or fill in a blank are weak evidence at best."); Zonak v.
Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir.
2008) (affirming the ALJ's rejection of the plaintiff's treating
physician's opinion because it was provided on a check-box form
and no reasons were given in support of the doctor's conclusion
on that form)).

some opinions little weight.  For other opinions the ALJ
afforded some weight.  The ALJ explained that Dr. Serrano's
findings on the medical source statement form were "more
restrictive than indicated by Dr. Serrano's clinical notes, much
of which detail claimant planning a wedding, being part of a
relationship with a new fiancé, and caring for a stepdaughter.
The treating evidence, which demonstrates improved psychiatric
symptoms with the claimant's course of treatment, to the extent
that she reported better functioning, and was able to remarry
and share a new household with her husband and stepdaughter, and
take on extra duties."  (R. at 22.)

In addition to the ALJ's assessment of Dr. Gengi and Dr.
Serrano, the ALJ performed this analysis for each medical
source, which readily meets her obligation to do so.[13]  See

---

[13] Plaintiff argues in her reply brief that remand is warranted
because of the ALJ's failure to address her anxiety disorder and
her failure to ascribe weight to the report of state
consultative examiner, Dr. Christopher Williamson.  The Court
first notes that "[a]bsent compelling circumstances . . . ,
failure to raise an argument in one's opening brief waives it."
Cobra Enterprises, LLC v. All Phase Services, Inc., 2020 WL
2849892, at *1 (D.N.J. June 1, 2020) (quoting Anspach v. City of
Philadelphia, 503 F.3d 256, 258 n.1 (3d Cir. 2007) (citing
Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d
375, 398 (3d Cir. 1994)) (finding that "[a]s a matter of
procedure, this Court will not accept arguments offered for the
first time in the reply brief, as they were not properly
asserted in the opening brief and Plaintiffs have not had the
opportunity to respond to them").  Although Plaintiff does not

Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is

_____

present any "compelling circumstances" for why these issues were
not raised in her opening brief, the Court will consider her
arguments because of the nature of Social Security cases.
First with regard to Plaintiff's argument that the ALJ failed to
consider her diagnosis by her treatment providers and state
consultative examiner, Dr. Christopher Williamson, that she also
suffered from anxiety, an impairment that she claimed on her
disability applications, the Court does not agree.  The ALJ
noted that on June 3, 2015, Dr. Williamson "diagnosed the
claimant with recurrent major depressive disorder, panic
disorder, generalized anxiety disorder, and history of PTSD
(Exhibit 7F)."  (R. at 20.)  The ALJ also noted Plaintiff's
reports of anxiety to her treatment providers.  (R. at 21.)  As
found above, the reports of Dr. Williamson and the other
treatment providers, which include reference to Plaintiff's
anxiety, were thoroughly considered by the ALJ.  Plaintiff has
failed to explain how her anxiety disorder separate from her
other disorders would alter the ALJ's analysis.  See Hess v.
Commissioner Social Security, 931 F.3d 198, 201 (3d Cir. 2019)
(reiterating that "the burden of proof is on the claimant at all
steps except step five.").  Second, with regard to Plaintiff's
argument that the ALJ's failure to ascribe any weight to Dr.
Williamson's opinion also warrants remand, the Court does not
agree with this argument as well.  As noted above, an ALJ is
only required to state what weight she affords a medical
source's opinion and not that source's medical findings.  The
only opinion Dr. Williamson provided in his report was that
Plaintiff was not able to manage her money at that time.  (R. at
388.)  Again, Plaintiff fails to articulate how that opinion in
June 2015 affects the ALJ's ultimate determination of
Plaintiff's RFC.  Finally, the Court's independent review of the
record shows no meaningful error on these two points.  See
Desorte v. Commissioner of Social Security, 2019 WL 1238827, at
*6 (D.N.J. 2019) (citing Richardson v. Perales, 402 U.S. 389,
401 (1971); Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984))
("This Court must review the evidence in its totality, and take
into account whatever in the record fairly detracts from its
weight. Plaintiff has not provided the Court with specific
evidence that detracts from the ALJ's RFC assessment, which the
Court finds on its independent review to be reasonable and
substantially supported.").

permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects").

The ALJ's comprehensive assessment of the medical evidence and explanation of the weight she afforded to it renders Plaintiff's RFC determination supported by substantial evidence.[14]   See Biestek v. Berryhill, 139 S. Ct. 1148, 1154

---

[14] See 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any

(U.S. 2019) (reiterating that the threshold for such evidentiary sufficiency under the substantial evidence standard is not high, and it "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

**(2) Whether the ALJ erred at step five**

The ALJ determined Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid exposure to fumes, temperature extremes, and other pulmonary irritants.  In addition, the claimant is limited to performing simple, routine tasks at a low-stress job, defined as requiring no fast production rate pace or strict production quotas.  She is further limited to no more than occasional interaction with the public, and work allowing her to be off-task for 10% of the workday.

(R. at 18.)

At the hearing, the ALJ presented this RFC as a hypothetical to the VE, who testified that someone with this RFC would not qualify for her previous job as a contract administrator, but she would be able to perform other jobs in the national economy such as a library page, cash clerk, and shipping/receiver.  (R. at 24.)

---

other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .").

Plaintiff argues that the specific vocational preparation
("SVP") for the jobs suggested by the VE do not align with the
limitation in the RFC that Plaintiff can only perform unskilled[15]
work involving only "simple, routine tasks."  Because the
requirements of the jobs do not match the RFC, the ALJ was
required to, but failed to, reconcile the discrepancy in her
determination at step five that jobs existed in the national
economy that Plaintiff could perform.  See SSR 00-4p ("When a VE
or VS provides evidence about the requirements of a job or
occupation, the adjudicator has an affirmative responsibility to
ask about any possible conflict between that VE or VS evidence
and information provided in the DOT. In these situations, the
adjudicator will: Ask the VE or VS if the evidence he or she has
provided conflicts with information provided in the DOT; and If
the VE's or VS's evidence appears to conflict with the DOT, the
adjudicator will obtain a reasonable explanation for the
apparent conflict.").

For the library page position, Plaintiff argues that the
skill levels do not match her RFC.  The Dictionary of

---

[15] See 20 C.F.R. § 416.968(a) ("Unskilled work is work which
needs little or no judgment to do simple duties that can be
learned on the job in a short period of time.").

Occupational Titles ("DOT")[16] describes the library page

position:

> CODE: 249.687-014
> TITLE(s): PAGE (library) alternate titles: runner; shelver;
> shelving clerk; stack clerk
>
> Locates library materials, such as books, periodicals, and
> pictures for loan, and replaces material in shelving area
> (stacks) or files, according to identification number and
> title. Trucks or carries material between shelving area and
> issue desk. May clip premarked articles from periodicals.
>
> GOE: 07.07.02 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 77

The General Educational Development ("GED") level L2

requires a person to "[a]pply commonsense understanding to carry

out detailed but uninvolved written or oral instructions.  Deal

with problems involving a few concrete variables in or from

standardized situations."  DOT, Appendix C.  The SVP of 1 or 2

---

[16] "The DOT is a vocational dictionary that lists and defines all
jobs available in the national economy and specifies what
qualifications are needed to perform each job."  Zirnsak v.
Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citing Appendix C,
Dictionary of Occupational Titles, available at
www.occupationalinfo. org/appendxc_1.html) (other citations
omitted).  The qualification categories listed by the DOT for
each job include the job's Strength level, General Educational
Development ("GED") level, and its Specific Vocational
Preparation ("SVP") level.  Strength level "reflects the
estimated overall strength requirement of the job."  GED
measures the "those aspects of education (formal and informal)
which are required of the worker for satisfactory job
performance."  GED is broken into three categories: (1)
reasoning development, (2) mathematical development, and (3)
language development. Reasoning levels in the DOT range from
level 1 to level 6.

typically corresponds to unskilled work.  See Benton v.
Commissioner of Social Security, 2019 WL 2285490, at *5 n.12
(D.N.J. 2019).

Plaintiff contends that the job requirement to "to carry
out **detailed** but uninvolved written or oral instructions"
conflicts with the RFC's requirement that she be "limited to
performing simple, routine tasks." (Docket No. 10 at 23,
emphasis added by Plaintiff.) Defendant counters that the job
requirement "to carry out detailed but **uninvolved** written or
oral instructions" aligns with the limitation of "performing
simple, routine tasks." (Docket No. 11 at 19, emphasis added by
Defendant.)

The focus of the inquiry into whether the RFC matches the
job requirements should not be on one word in a phrase, but
instead the whole phrase itself.  The library page position
requires that a person "[a]pply commonsense understanding to
carry out detailed but uninvolved written or oral instructions."
The Court finds that this limitation matches Plaintiff's RFC
that she perform "simple, routine tasks."

The ALJ's decision provides that Plaintiff self-reported
"she followed written instructions very well." (R. at 17.)
This was corroborated by Plaintiff's treating psychiatrist, Dr.

Serrano, in January 2018, where he found that Plaintiff "had no limitation with performing simple tasks, maintaining regular attendance, simple decision-making, asking simple questions, and being aware of normal hazards with appropriate precautions." (R. at 21.)  The ALJ mirrored this evidence in the record by formulating an RFC that accounted for Plaintiff's ability to perform "simple, routine tasks."  Short of the ALJ repeating the exact phrase used by the DOT in its definition of GED level L2, something which the ALJ is not required to do, Plaintiff offers no other way the ALJ could have articulated the "simple, routine tasks" limitation differently so that the limitation would align with a GED level L2 job.  See, e.g., Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) ("Money makes the assumption that even a reasoning level of 2, where 1 is the lowest possible level of reasoning, is incompatible with the ALJ's decision in her RFC that her jobs must be simple.  However even level two only requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations.'  Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive.").

24

As to Plaintiff's argument that the ALJ failed to explicitly ask the VE whether the suggested jobs conflicted with the DOT, such an error is harmless and will not result in remand when no conflict exists.  Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citations omitted) ("[T]his Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result."); Jackson v. Barnhart, 120 F. App'x 904, 906 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless.  Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision) (citing Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) ("[T]his Court has not adopted a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.") (other citation omitted)).  Because there was no conflict between Plaintiff's RFC and the library page position, the ALJ did not err in this regard.

Finally, the Court will not consider whether the other two

jobs - cash clerk and shipping/receiver - match Plaintiff's RFC. At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy. See Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b)) (explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).  Substantial evidence supports the ALJ's determination that Plaintiff's RFC rendered her capable of performing the library page position, and that position exists in significant numbers in the national economy with 16,250 jobs nationally.  (R. at 24.)  Consequently, the Court finds that the ALJ did not err at step five.

III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the

26

ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645,

647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178,

1182 (3d Cir. 1992)).  The Court finds that the ALJ's

determination that Plaintiff was not totally disabled as of

October 1, 2014 is supported by substantial evidence.  The

decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date:  June 10, 2020              s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

27